1-6-1301 WundaFormer v. Flex Studios. Mr. Bader, please proceed. Okay, please support. There are two terms at issue today. I'd like to start with the term stowed. The district court's construction of the term stowed improperly included the limitation that the ergonomic purchase is not intended for use by a user exercising by means of the reformer. And this is actually a rare case where the patentee actually defined the term stowed in the specification. Let me be clear. Absent the patentee's lexicography, would you agree that all the dictionary definitions produced, both those by you as well, I guess you produced one dictionary, they produced a different one, all contain use elements in the definition of stowed such that the plain meaning, in the abstract, not in this patent, but just in the abstract, plain meaning to a random person of the word stowed would include a use aspect? I would actually disagree with that. I think the gut reaction when you hear those two terms and you look at the express definition of deployed in the spec and then if you were to ask someone walking down the street what is the definition of stowed then, you may come up with what the district court did. However, to specifically address your question, one of the definitions in the record actually is from the 2011 American Heritage Dictionary of English Language. And the definition of stowed there, the first definition, is to place or arrange especially in a neat and compact way. Now that has nothing to do with whether or not something is available for use. The second definition does go the other way. However, there are certainly definitions that don't talk about stowed in terms of availability for use and those definitions are in the record. So I would disagree. Maybe your gut reaction is yes, stowed means not available for use. But here, of course, the first thing we have to do is look at the patent itself. Where have you heard the word stowed used most often? What's your premier status? Yeah, I would think maybe on an airplane. Stowed your luggage. Of course, that's where I'm going. Every flight attendant has this little thing memorized where they tell you to stow your articles. And that always means stick them underneath the seat in front or in the overhead and you can't use them while you're in flight. I think that's right. And what we're talking about here is a patent directed to a specific invention of a Pilates reformer. And in this instance, stowed does not mean put away and not intended for use. To the contrary. Well, does it mean not intended for use while using the Pilates reformer in its intended exercise fashion? I have some degree of familiarity with these devices. Maybe one for three in that regard, I'm just guessing. But in any event, you can't use the Pilates reformer, for example, to do the Pilates exercises when the jump board and the ballet bar and all of those things are compacted down and put away, can you? So with respect to the jump board and the ballet bar, I would agree in this instance those two of the ergonomic purchases do not appear to be available for use when they're in the stowed position. I would disagree with respect to the handles and also the bench. The bench, if you look at the summary of the invention, the bench rotates into two separate positions. And if you look at column two, line 58 through 61, the spec there actually says, therefore, the bench when stowed provides a seat at the carriage level. And when deployed, the bench may provide a seat at a level other than the carriage and also a push-off surface that faces the carriage. Now, the seat is something that is used with the exercise. That's the whole purpose of this device is to have a seat that can be used in different positions to do various different exercises. And we actually have some pictures in the record. If you look at illustration seven in the blue brief, that actually shows not only our device, the Wonderformer device, being used with the bench in the stowed position. But there's also, excuse me? What page is that? I believe it is page 15 of the blue brief. No, there's no. It would help if I could get your brief. Not the last case. I'm sorry about that. Page 15. So what does that illustrate, the use of the bench in the stowed position? So that's actually showing the bench. The figure on the left is the commercial embodiment of the Wonderformer machine. And that actually shows the bench having been rotated to the down position. And that shows the inventor actually on the machine doing exercise. Now, the picture on the right is actually the accused product. And the bench that her back foot is on there moves up and down. If you look on page 14, you can actually see the bench in the upper position there, in the deployed position. And then on the right, on page 15, the bench has moved down. Now, that's a picture that we actually located on the Internet. We didn't create this picture. It actually shows the device being used when in the stowed position. This is both of these photographs or the flex one? I'm sorry. The picture on the left is the Wonderformer and the picture on the right is the flex machine. Where did these pictures come from? The picture on the left was actually something that we created in connection with an expert declaration that was submitted in the case. And the picture on the right was something that was evidence in the case. It was located on the Internet. So I think that highlights pretty clearly why the defendant has tried to import this limitation into the claim that it's not intended for use. Can I just ask about a couple of things? So the district court's claim construction not only didn't adopt, but rejected a proposal that when in stowed position, there is a requirement of unavailability for use. No, no, you clearly can't. This is, in fact, just about not intended to be used. Yes, I agree. I think that's one of the kind of hard things about the district court's opinion to reconcile. Well, except that the whole point of the district court's opinion is when you read the patent, you keep getting the impression over and over again that stowed is the opposite of deployed. And while it is, in the abstract, a singularly strange construction to say this is about somebody's intent to be used, unmistakably that's true for deployed. So it suddenly becomes not at all weird to say it for the mirror image. So I actually disagree that the spec is consistent in that manner. There are embodiments that appear, not that the spec actually says that it's unavailable for use, but that appear where you wouldn't be able to use the jump board, for example. However, there are embodiments that specifically actually say this is a seat for exercise when used or in the stowed position. So you have this one embodiment where- Is the column two, line 58 business, is that the one embodiment that you pointed to where you say the stowed position is being discussed as a position in which the ergonomic purchase would be used for exercise? Correct, with respect to the bench. And just that one line, right? Because it seems to me that line is not exactly clear about using the bench as a seat for exercise as opposed to using it as a seat. Well, the whole point of these machines is simply to do exercises. There's no reason to simply sit on a bench by itself and not exercise. That's just not something that's done. Well, resting, I guess. Is there something else in the patent itself that ever discusses using the bench in the down position for exercise? I don't think there's any other space or any other spot in the specification that describes that. There was an expert declaration submitted in the case that certainly describes that. That sometimes people do, and the district court said, yes, I agree. There's evidence of that, so I'm not building that into the claim construction. Again, I guess- Why did you stipulate to non-infringement under- you have this photograph showing the other sides on their website, is that what you said? Yes. Showing somebody that you say is using the device with the bench in the down position, why do you stipulate that there can't be infringement under the district courts? When we reviewed the district court's ruling and construction, we looked at that and said, how can we in good faith say that this bench is not intended for use? We know how these benches are used, we know how these Pilates machines are used, and the whole point of the bench being able to be in different positions is so that it can be used for different exercises. There is an efficiency and a reason to stow it for purposes of- Maybe you're not understanding what might not be legally relevant here, but I guess is puzzling to me. You have a photograph from their website, so let's say you interpret that photograph as their advertising a particular use of their machine. Why, in the face of that evidence, do you stipulate that their machine is not intended to be used with the bench in the down position? I don't think that that's- if the construction requires that it not be intended for use, that picture clearly shows that it is intended for use when in the stowed position. So I think we have a very hard time proceeding in view of that evidence. Let me ask a simple question here. You keep saying intended for use. Shouldn't we be looking at whether the seat can be used? I mean, can you claim the intent of the use? I agree with you that I don't think we should be looking at the intended use, and I don't think we need to be looking at the availability of the use. I think the patentee described what stowed means, and that's what we need for infringement to look at. Perhaps we can look at the intended use, but the intent of the user to use something. I agree it's very- that turns infringement into a subjective kind of determination of what someone happens to be using the machine for at that moment. Did you address this issue at all? I think that's improper. Excuse me? Did you address or did anyone address this issue at all? We certainly addressed the fact that we did not think that the limitation that it's not intended for use and available, which is what they were arguing at the time, was improper. And if you- again, if you go back to the express definition, it says the term stowed, as used here, means a state or position of the component of the reformer which collapses the overall volume of the reformer to a minimum. That says nothing about intended for use, unavailable for use, or anything else. That's the definition. And the minute we start wading into this discussion about whether the bench is intended for use or not intended for use, I think the court has gone down the entire wrong path here. In full disclosure, I have an exercise on a Pilates machine, but I've lifted one. I've moved one a number of times. And regardless of whether any of the attachments are deployed or stowed, they weigh a lot. That's true. All right, Mr. Bader, let's hear from Mr. Barnett. We'll save the remainder of your time for rebuttal. May it please the court. I'd like to begin with the dictionary definitions. That's where Mr. Bader started because I think you were actually- you received an incomplete definition. The definition that Mr. Bader read to you, which is on page 11 of the red brief, is to place or arrange especially in a neat, compact way. But that's actually not the full definition here. There's actually a colon that follows that statement, and the definition continues. Stowed his gear in a footlocker. Well, clearly when your gear is placed in a footlocker, it's not available or intended for use. And in fact, there's nothing in that statement that suggests that the gear was- Yes, but whether you're right kind of is irrelevant because his argument is that there was lexicography here. So the dictionary definitions are no longer applicable. Sure, fair enough. Fair enough. So why don't we talk about that for a moment? Because there's a definitional paragraph that applies to the term stowed. And I think we would argue that that first sentence of that paragraph, which is the sentence that Mr. Bader read, doesn't give the full picture of that term because that paragraph continues. And I'm looking here. This is at A47 of the appendix, and the paragraph that we're talking about begins at column 5, line 56 of the patent. And it says, the term stowed as used herein means a state or position of a component of the reformer which collapses the overall volume of the reformer to a minimum, insofar as it may be affected by the component. But that paragraph continues. It says, in other words, and then it proceeds to provide certain illustrations of how that term would be used in practice. And it speaks to stowing the components for purposes of storage. It speaks to stowing the components for purposes of transport. I would actually direct the court briefly to, this is at A45 of the appendix, column 2, beginning at line 35. Well, before you move on, I mean, you just summarized a bunch of stuff here. But it says, a component translated into a stowed position in practical terms is no longer reachable for the same purchase achieved by the user in a position on the reformer from which she gained the purchase when the component was deployed. Well, that's certainly true. When the handles are lower, they're not fully accessible at the same range, but they're still accessible for the user. The handles in this picture, unlike in your product, which involve a cable, are, in the patent, they're demonstrated as recessed bars. Like, think of a bench. That's what I think of, like a bench press or something. And so they're just bars, and they're recessed. That's like doing pushups on your knees versus pushups on your feet, or doing planks on your elbows versus on your hands extended. Those handles are still fully accessible for use on the entire machine when they're in their stowed position. The whole machine could otherwise not be stowed. Those handles are stowed, but they're still fully accessible, at least in the description in the patent, and can be used as the exercise machine is intended to be used. Well, I think that there's a very important point to be drawn there, which is that when the patentee wanted to connote that a given ergonomic purchase was available and intended for use for performing exercises by means of the reformer, they had at their disposal a very particular term, a very precise term that connoted exactly that. And, of course, that was the term deployed. So if the patentee wanted to express that the handles, in your example, in their fully depressed position, were available and intended for use as a purchase by a user exercising by means of the reformer, I think one would expect them to label the handles in that configuration both stowed and deployed. They're stowed in the sense that— But that's only true if those two concepts are somehow at odds with each other or opposites of each other. Isn't there room for stowed being somehow different than deployed but not completely and always the opposite of deployed? I mean, that's—the district court construction and your construction that you're proposing has these two things as opposites to each other. Sure. Correct. And I'm not positive that that's the way I read these definitions in the spec. Sure. And I appreciate that. And I think there's other evidence in the intrinsic record and in the specification that illuminates that issue. And where I might point the court is to A48 of the appendix, and we're at column 8 beginning at line 3. And it says, More detailed examples of the mechanical means for translating each of the ergonomic purchases from their stowed to their deployed positions are provided below. Now, what that statement— Just say again what you're reading. Sure. It's column 8. This is at A48 of the appendix. And it's column 8 beginning at line 3. And it says, More detailed examples of the mechanical means for translating each of the ergonomic purchases from their stowed to their deployed positions are provided below. In our view, that clearly expresses the patentee's intent that you actually have to physically move a given ergonomic purchase from its stowed to its deployed position. And consequently, these two configurations can't exist concurrently. No, it's not that they can exist concurrently. You move one from the stowed to the deployed position, but they could both exist and be used for exercise. That's what I'm not following. Sure. I misunderstand. Why can't you use this machine for its intended purpose, for example, when the handles are shown in figure 10 to be stowed? Sure. And I might, because I think the handle argument and their argument, the bench as a seat, are very similar in that respect. I might go to the bench as a seat argument, if I could briefly, because I think that argument fails for three principal reasons. Certainly the first of which is that if the patentee wanted to express that the rotatable bench, as shown in figures 8 and 10, was intended to be used, they would have labeled it deployed and stowed. And that would have cleared up this ambiguity. It would have told us that these aren't mutually exclusive terms, that these terms aren't terms of opposition. But they didn't label it that way. And the second reason that that argument fails, the bench as a seat argument, is because the district court construed ergonomic purchase to mean a surface designed for contacting by a human engaged in exercise while mounted on the moving carriage to achieve stability. Now that while mounted on the moving carriage language is critical here, because clearly if someone's sitting on the bench, they're not mounted on the moving carriage. And so the bench wouldn't even constitute an ergonomic purchase as that term has been construed. And I need to emphasize at this point that the term ergonomic purchase, the construction of that term, has not been challenged here on appeal. The construction of deployed has not been challenged here on appeal. And I think it's worth maybe circling. Oh, they're seated on the bench, but you saw the pictures in the blue brief. Sure. You can be both on the carriage and have a foothold on the bench. Absolutely. And not be operating the machine. Let's talk about those pictures. Even though that is clearly not disclosed anywhere in the specification, but you could nonetheless do that. I agree. And I think we should talk about those pictures, because there's a couple important points to make about them. The first of which is, as counsel has acknowledged, that image didn't even come into existence until after this case was filed. Meaning that type of evidence would not have even been available to the hypothetical person of ordinary stone. We are trying to ascertain what the term stowed meant in the context of this patent. It wasn't even in existence. Secondly, I think that there's a bias issue that plagues that image in particular. Does that corroborate what's in the specification about being able to use the bench while it's in the stowed position? Well, I want to be clear on that point. It never says that the bench can be used for exercise in the stowed configuration. It says it can be used as a seat. It does say someone could sit on it. But to kind of tease out that argument, I want to direct the court, actually, to Figure 3, if I could, briefly, which is A31 of the appendix. And what you'll see in this figure is it illustrates the ballet bar, which is identified by reference numeral 49, in its stowed configuration. Now, the only portion of the ballet bar that's actually visible here is the horizontal crossbar aspect of it. It's at the bottom left of Figure 3, element 49. Now, someone could sit on that. There's a flat platform there. Someone could conceivably use the ballet bar as a seat in that stowed configuration. However, I don't think that that supports the proposition that the ballet bar is intended for exercise in use by means of the reformer, simply because someone could sit on it in that configuration. I guess moving along, the critical aspect of the district court's construction is that the patent unmistakably presents these terms stowed and deployed as opposing terms, mutually exclusive terms. There's not a single indication anywhere in the entire intrinsic record demonstrating that a given ergonomic purchase could be concurrently stowed and deployed. But the definitions expressly made in the spec are different. Deployed uses intent clearly and unmistakably in the definition in column 5, and stowed does not. Stowed is all about the smallest possible footprint of the device, reducing it to its smallest possible physical size. I would point the court to the end of that definitional paragraph where it notes that, I think it says, contemporary dictionary definitions of the term stowed used in this mechanical sense may apply equally to the use of the term throughout this disclosure. So what that tells us is a couple things. It tells us that the very first sentence in that paragraph isn't necessarily the end-all, be-all when it comes to what stowed means. It says that you can consult other sources to try and ascribe a meaning to that term. No, not to ascribe a meaning. You can consult other course, other definition, contemporary dictionary definitions in the mechanical sense. The mechanical sense, which is elucidated by the prior paragraph, clearly involves the size of the reformer and the location of the components when they are stowed. I would note that Wonderformer itself has perhaps interpreted that passage differently than maybe the court has because they, of course, cite to the American Heritage Dictionary in support of the dictionary definition that they feel is most applicable in this circumstance. Right, because the one that they've cited to us relates to the mechanical aspect of the word stowed, not the intentional aspect. I mean, it's very, very strange. I understand why the district court and why you would suggest that intent be a component, but it's very strange to conceptualize intent as an aspect of a structural component in an apparatus claim, intent of use. That's a very foreign concept. Now, I understand it gets sucked in because of their express definition of deployed. I'm just not sure that it should get sucked in given the abnormality of importing intent into an apparatus claim, intent of use, into stowed when stowed does not likewise contain that. I fully appreciate that position, and I, of course, agree that it is somewhat of a bizarre way to express a mechanical device. In effect here, what we have is the term ergonomic purchase in asserted claims 11 and 15 is a purely functional term. We don't know anything about what that structure is in the asserted claims. All that we know is what it does. We know that it's translatable between these two configurations that, of course, must be ascribed different meanings. And incidentally, the asserted claims 11 and 15 should be contrasted with the non-asserted independent claims of this patent suit that actually do express structure for the term ergonomic purchase. In independent claim one, it says wearing the ergonomic purchase comprises the rotatable bench. But the fact of the matter remains this is the way that the patentee chose to express their invention was through intended use. I agree it's perhaps not the best way to have gone about this. This might have been a much easier analysis had they actually defined it structurally, which I think they perhaps could have done unless the prior art would have precluded the patentability of the invention had they sought to describe it in a structural fashion. Can I ask you what passages in the specification other than the column 8 top passage are the indicate to you the central premise that you can't be both employed and stowed? Sure. Because I take it is the central premise because the definition of deployed is a state or position of a component of the reformer in which the component is intended to be used by a user exercising by means of the reformer, not just, it doesn't say the state or something like that. So any state would qualify. Absolutely. The opposite of that would be what the district court said. Sure. So I guess maybe a good place to start, as it always is, is in the claims themselves. I would direct the court to A51 of the appendix, and we can look to dependent claim 7. It's in column 13. It says the reformer of claim 6 configured so that the translation of the ergonomic purchase from the stowed to the deployed position requires sliding the jump board. Again, it's reflecting this notion that there has to be a translation, actual physical movement from one configuration to the other, from stowed to deployed. You have to physically move each of these various components between those two configurations. There's also a passage at, we talked a bit about this. It's actually within the definitional paragraph for stowed, and I'm here at A47 of the appendix, and at column 5, lines 63 through 67. It says a component translated to the stowed position, and continues, is no longer reachable for the same purchase achieved by a user in the position on the reformer from which he gained the purchase when the component was deployed. Again, that's expressing the fact that a given component can't concurrently exist in stowed and deployed configurations. It ultimately boils down to really a logic game is what we have here, is that we have these two opposing mutually exclusive configurations. If deployed is taken to mean the intended use state, it follows that stowed would reflect a position of non-intended use. I think we looked at some of the exemplary purchases. Certainly, the jump board, I think, maybe provides the clearest indication. Okay, Mr. Barnett, we are out of time. Thank you very much for your time. Mr. Bader, you have a little bit of rebuttal time left. Sure, just very briefly. When you look at the full term, or that full paragraph of the definition of stowed, I think the other place that shows that the component actually can be used while in the stowed position is the sentence. I'm sorry. Can be used is not the issue in front of us. Intended to be used is. That was the construction that was adopted. Sure, intended to be used. Where were we reading from? The third sentence of the definition of the term stowed. It's at starting at column 5, line 63. Okay. It says, a component translated to a stowed position in practical terms is no longer reachable for the same purchase achieved by the user in the position with the reformer from which he gained the purchase when the component was deployed. So that is actually implying that when you move the reformer into the stowed position, it is available for a different purchase. Different purchase is simply a frictional point or something where you can use the machine to do exercise. So I think that actually supports the fact that what the district court did was wrong. It shouldn't have said that the stowed position is not intended for use. Can I just ask? Sure. Is it your view that the same position can be both a stowed position and a deployed position? No, I think there are two sets. The device has to at least have two positions, one of which meets the definition of deployed and one of which meets the definition of stowed. So I don't think one single position can meet both of those definitions. That's correct. Then why doesn't Judge Rakoff's construction follow immediately? Because the definition of deployed is the term deployed as used herein means a state or position of a component of the reformer in which the component is intended to be used by a user exercising by means of the reformer. So if there were a stowed position intended to be used for exercise, it would then be a deployed position. I disagree. I think if you look at both, looking at the definition of deployed means a state or position of a component of the reformer in which the component is intended to be used. Now, once you get to the second position, that has to be a separate second position that then minimizes the volume of the reformer according to the definition of deployed. So there still has to be two separate positions. And once you're in the deployed state, excuse me, stowed state, that same position cannot be considered to be a deployed state. I think the last point is if the inventor here had wanted to define stowed as not being intended for use, there's a very clear way to do it. The definition of deployed, which immediately precedes it, says that it is intended for use. If the definition of stowed was meant to be the opposite of that, we would have seen something that said the term stowed as used herein means a state or position of the component of the reformer in which the component is not intended to be used. And that simply doesn't take part. I'm confused. Your answers to Judge Taranto's most recent questions seem to me to be quite inconsistent with the position that you need to achieve to prevail in this case. So let me go back over it with you because if you think deployed and stowed are mutually exclusive, that you can't be both stowed and deployed at any point, then how do you prevail? Because in order to prevail, you want me to say something can be stowed and still be intended for use. That's what you need to get to to prevail. Something can be stowed if it's in its minimal position. So it's irrelevant whether it's intended for use or not. So that means it can be stowed if it's in this minimal physical space position and is still intended for use that way. If the only definition of deployed is intended for use, and if your view of stowed is it has nothing to do with intent, do you see the problem with this that you've created right now? I guess I shouldn't be using the term mutually exclusive. In order to meet the definition of stowed, you simply have to be in a position that minimizes the volume of the reformer. That's what the express definition says. But you still could have – that position could still result, in your view, in a position in which it is intended that the user could exercise. It could be or it could not be. I think it's irrelevant. You think that stowed is irrelevant to intent. I think it's an irrelevant import. But it could be. So they're not mutually exclusive if – I understand your argument. Correct. Because if they're mutually exclusive, then stowed can never include intent to use when it's in that physical position. I'm sorry. I think I probably misspoke. As long as you have – meet the definition of stowed, then once you have a position that is also available or intended for use, that's a separate deployed position. I don't think they're mutually exclusive. Okay. I think we should end there. I thank both counsel for their argument. This case is taken.